**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| ALLAN F. MIDYETT, | DOCKET NUMBER |
| Appellant, | DA-1221-12-0554-W-2 |
| v. | |
| DEPARTMENT OF VETERANS AFFAIRS, | DATE: May 26, 2016 |
| Agency. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Carole D. Sexton</u>, Esquire, Fayetteville, Arkansas, for the appellant.

<u>Lynne Ravellette</u>, Esquire, North Little Rock, Arkansas, for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### FINAL ORDER

¶1    The appellant has filed a petition for review of the initial decision, which denied his request for corrective action. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).  After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review.  Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision.  5 C.F.R. § 1201.113(b).

## BACKGROUND

¶2        The appellant was appointed to a Radiologist position in November 2010. *Midyett v. Department of Veterans Affairs*, MSPB Docket No. DA-1221-12-0554-W-1, Initial Appeal File (IAF), Tab 9 at 93-95.  In December 2011, the agency suspended the appellant's clinical privileges and subsequently convened a Professional Standards Board to review his conduct and performance.  *Id.* at 70, 79, 83-85.  The Professional Standards Board recommended that the agency terminate the appellant because he engaged in substandard care and could not perform the duties of his position.  *Id.* at 69-74.  The appellant was terminated, effective April 6, 2012, during his probationary period.  *Id.* at 58, 66-67.  On April 25, 2012, the appellant was informed that his clinical privileges were automatically revoked as a result of the agency's action.  *Id.* at 56.  On June 5, 2012, a Fair Hearing Panel was convened to determine whether the revocation of his privileges was the result of "substandard care, professional incompetence, or professional misconduct."  IAF, Tab 25 at 16-24.  Based on the Panel's finding, the agency sent an Adverse Action Report to the National Practitioner Data Bank

and contacted the appropriate state licensing Boards. IAF, Tab 20 at 11, Tab 25 at 25-27.

¶3      The appellant filed an individual right of action (IRA) appeal alleging that the agency took a variety of actions against him in retaliation for protected whistleblowing activity. IAF, Tab 1. He also appeared to assert that the agency discriminated against him, committed harmful procedural error, and violated his rights pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994 (codified at 38 U.S.C. §§ 4301-4333) (USERRA) and the Veterans Employment Opportunities Act of 1998 (VEOA). *Id.*[2] The administrative judge held a 3-day hearing. IAF, Tab 64, Hearing Compact Diskette (HCD).

¶4      The IRA appeal was dismissed without prejudice and refiled. *Midyett v. Department of Veterans Affairs*, MSPB Docket No. DA-1221-12-0554-W-2, Appeal File (W-2 AF), Tab 1. The administrative judge issued a 53-page initial decision which denied corrective action. W-2 AF, Tab 5, Initial Decision (ID). In pertinent part, the administrative judge found that the appellant made a nonfrivolous allegation that the Board has jurisdiction over the appeal and that the appellant established that the agency took several actions against him, including revocation of his clinical privileges and termination. ID at 9-13. The administrative judge further found that the appellant made three protected disclosures and the disclosures could have been a contributing factor in some of the claimed personnel actions. ID at 13-20.[3] Finally, the administrative judge made detailed credibility determinations in favor of the agency and concluded

---

[2] The appellant's USERRA and VEOA appeals were docketed respectively as *Midyett v. Department of Veterans Affairs*, MSPB Docket No. DA-4324-12-0568-I-1, and *Midyett v. Department of Veterans Affairs*, MSPB Docket No. DA-3330-12-0569-I-1.

[3] Although not raised by the appellant on review, we clarify that the disclosure discussed in the initial decision in footnote 16 occurred in December 2011, not December 2012. ID at 18 n.16.

that the agency proved by clear and convincing evidence that it would have taken the personnel actions notwithstanding the protected disclosures. ID at 21-47.[4]

¶5      The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. The agency has not filed a response. On review, the appellant asserts that the initial decision does not address his "due process violations," and he discusses a claim of harmful procedural error. *Id.* at 2-23. He further alleges that the administrative judge made erroneous factual findings in the initial decision. *Id.* at 2. He also contends that new and material evidence is available that was not available when the record closed, despite his due diligence. *Id.* at 2, 30-110. The appellant includes the following documents with his petition for review: (1) excerpts from the Veterans' Health Administration (VHA) Handbook; (2) various statutes and regulations; (3) a June 27, 2012 National Practitioner Data Bank Report; (4) excerpts of the hearing transcript and affidavits of agency officials in his equal employment opportunity (EEO) matter; (5) a May 22, 2014 letter from the agency facility Privacy Officer; (6) an undated newspaper article and correspondence about a veteran's substandard care at the agency facility in June 2011; and (7) emails regarding the appellant's wife's hospitalization in August 2011. *Id.* at 30-110.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶6      Under the law in effect at the time of the material events in this appeal,[5] the Board has jurisdiction over an IRA appeal if the appellant has exhausted his

---

[4] The administrative judge noted in the initial decision that he previously dismissed the appellant's USERRA appeal for lack of jurisdiction and neither party filed a petition for review of that decision. ID at 6 n.10. He also stated that he separately dismissed the VEOA appeal for lack of jurisdiction, the appellant's petition for review of that initial decision was denied by the Board, and the U.S. Court of Appeals for the Federal Circuit affirmed the Board's decision. *Id.*

[5] All of the relevant events, including the appellant's termination, occurred before the December 27, 2012 effective date of the Whistleblower Protection Enhancement Act of 2012 (WPEA). Pub. L. No. 112-199, § 202, 126 Stat. 1465, 1476. The administrative judge, however, correctly applied the WPEA's expanded definition of protected

administrative remedies before OSC and makes nonfrivolous allegations that: (1) he engaged in whistleblowing activity by making a protected disclosure; and (2) the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action. *Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001). After establishing the Board's jurisdiction in an IRA appeal, the appellant then must establish a prima facie case of whistleblower retaliation by proving by preponderant evidence that he made a protected disclosure that was a contributing factor in a personnel action taken against him. 5 U.S.C. § 1221(e)(1); *Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 12 (2015). If the appellant makes out a prima facie case, then the agency is given an opportunity to prove by clear and convincing evidence that it would have taken the same personnel action in the absence of the protected disclosure. 5 U.S.C. § 1221(e)(1)-(2); *Mastrullo*, 123 M.S.P.R. 110, ¶ 12.

¶7      The majority of the appellant's petition for review focuses on his assertions that the administrative judge failed to rule on his due process claim and the agency committed harmful procedural error. PFR File, Tab 1 at 3 (arguing that he was not provided notice of the charges against him or an opportunity to respond before he was terminated), 4 (stating that he has a constitutionally protected interest in his medical license and staff privileges), 11 (alleging that the agency violated its own procedures). However, these claims may not be heard in the context of an IRA appeal. *Hugenberg v. Department of Commerce*, 120 M.S.P.R. 381, ¶ 24 (2013). Regarding the appellant's assertion that he "is a minority male who was treated differently [than] a white female," PFR File, Tab 1 at 21, the Board lacks the authority to decide a discrimination claim in the context of an IRA appeal, *see Marren v. Department of Justice*, 51 M.S.P.R. 632, 638-39

---

disclosures even though the events at issue preceded its enactment. ID at 13; *see Day v. Department of Homeland Security*, 119 M.S.P.R. 589, ¶ 26 (2013) (concerning the retroactivity of the WPEA).

(1991), *aff'd*, 980 F.2d 745 (Fed. Cir. 1992) (Table), *and modified on other grounds by Robinson v. U.S. Postal Service*, 63 M.S.P.R. 307, 323 n.13 (1994). Thus, the administrative judge's failure to discuss these claims does not warrant reversal of the initial decision.

¶8        We have considered the appellant's assertion that the administrative judge made erroneous factual findings.  Although the assertion itself is unclear, we understand this allegation to relate to (1) a discrepancy between the testimony of J.C., Chief of Anesthesia and Chairman of the Fair Hearing Panel, and the initial decision, and (2) the administrative judge's erroneous identification of the appellant's position.  PFR File, Tab 1 at 13, 26.  Even if we assume for the purposes of our analysis that the administrative judge made such erroneous factual findings, the appellant has not persuaded us that either of these errors calls into question the administrative judge's otherwise proper analysis of this IRA appeal.  Therefore, we conclude that these errors are not prejudicial to the appellant's substantive rights and do not provide a basis for reversing the initial decision.  *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984).

¶9        We have also considered the appellant's assertion that the administrative judge failed to mention in the initial decision his recently filed VEOA and USERRA matters bearing docket numbers DA-3330-15-0309-I-1 and DA-4324-15-0569-I-1, respectively.  PFR File, Tab 1 at 15.  It appears from the Board's case management system that these matters are pending before an administrative judge in the Dallas Regional Office.  Moreover, the appellant has not explained how these VEOA and USERRA appeals are related to his IRA appeal.  We therefore discern no error with the administrative judge's failure to mention these other matters in the initial decision.

¶10       Finally, we have reviewed the appellant's documentation included with his petition for review.  Under 5 C.F.R. § 1201.115, the Board generally will not consider evidence submitted for the first time with the petition for review absent

a showing that it was unavailable before the record was closed despite the party's due diligence. *Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 214 (1980).[6] Several of the documents that the appellant provided in his petition for review are dated after the close of the record below, including the letter from the agency's facility Privacy Officer, excerpts from the hearing transcript and from affidavits in the appellant's EEO matter,[7] and correspondence regarding a veteran's substandard care at the agency facility in June 2011.[8] IAF, Tab 28; HCD. Even if we consider this "new" evidence, we find that it is not of sufficient weight to warrant a different outcome. *See Russo v. Veterans Administration*, 3 M.S.P.R. 345, 349 (1980).

¶11 For instance, the appellant argues that the correspondence regarding a veteran's substandard care at the agency facility constitutes proof of the agency's motive to retaliate, which is a factor that the administrative judge evaluated as part of the clear and convincing analysis. PFR File, Tab 1 at 23-24, 98-101; ID at 41-43; *see Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999) (finding that, in determining whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of whistleblowing, the Board will consider, among other things, the strength of any motive to retaliate on the part of the agency officials who were involved in the decision). He asserts that Medical Center Director M.E. and

---

[6] Evidence that is already a part of the record, such as the National Practitioner Data Bank Report, IAF, Tab 25 at 25-27, is not new, *Meier v. Department of the Interior*, 3 M.S.P.R. 247, 256 (1980).

[7] One of the affidavits is dated before the close of the record. PFR File, Tab 1 at 106. However, we credit the appellant's explanation that he did not obtain the transcription of this affidavit until after the close of the record pursuant to an order from the Equal Employment Opportunity Commission Administrative Judge. *Id.* at 30, 103-05.

[8] The correspondence appears to be dated "Saturday, December 1." PFR File, Tab 1 at 99. We take administrative notice that December 1 was on a Saturday in 2012. *See* 5 C.F.R. § 1201.64 (stating that administrative notice may be taken of matters of common knowledge). Because December 1, 2012, was after the close of the record below, IAF, Tab 28; HCD, we consider this correspondence as new evidence.

Chief of Staff J.H. were "named as responsible parties" in the incident involving the veteran and they concealed this fact. PFR File, Tab 1 at 24; *see id.* at 98-101. The appellant also argues that the "cat's paw" theory should apply because Dr. M.E. had "'singular influence' . . . by directing the procedure to ensure the outcome." PFR File, Tab 1 at 24 (citing *Staub v. Proctor Hospital*, 562 U.S. 411 (2011)). He further alleges that Dr. M.E. was a "responsible party" because he failed to follow the VHA Handbook, when the agency terminated the appellant without allowing him to see the evidence against him, and directed others not to allow any information to contradict the Professional Standards Board recommendation. PFR File, Tab 1 at 24.

¶12 We are not persuaded that this new evidence warrants a different outcome. Notably, the correspondence regarding the veteran's substandard care at the agency facility does not appear to identify Dr. M.E. or Dr. J.H. as having any direct involvement with the veteran; rather, it appears that the correspondence is directed to Dr. M.E. and Dr. J.H., presumably because of their administrative roles at the agency facility. *Id.* at 98-101.

¶13 Additionally, the administrative judge discussed the "cat's paw" theory in the initial decision. The administrative judge noted that the appellant failed to prove by preponderant evidence that Dr. J.C. or Dr. R.L., Chief, Pathology and Laboratory Service, and the Chairman of the Professional Standards Board respectively, had any knowledge of the appellant's whistleblowing disclosures. ID at 20. The administrative judge also found that the appellant produced "no evidence" to support the finding that anyone influenced either of them to take any action under this theory. ID at 20-21. The administrative judge nevertheless examined the personnel actions that Dr. J.C. and Dr. R.L. were involved in, but he did not come to a different conclusion on this issue. ID at 34-39, 41.

¶14 Most importantly, the appellant's evidence and argument on review does not persuade us that the administrative judge erred in his thorough analysis of Dr. M.E.'s or Dr. J.H.'s knowledge of the whistleblowing disclosures, their

respective actions, or his conclusion that Dr. M.E. and Dr. J.H. "had little motive to retaliate." ID at 41-43. The administrative judge made credibility determinations and found that the testimony of the agency witnesses, including Dr. M.E. and Dr. J.H., was "straightforward," "candid," "transparent," "believable," and "far more persuasive than the testimony of the appellant." ID at 45-47 (citing *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987)). The Board must give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). The appellant has not identified any such reasons in his petition. We otherwise discern no error with the administrative judge's analysis of the agency's motive to retaliate.

¶15    We also have considered the May 2014 letter from the agency facility Privacy Officer. PFR File, Tab 1 at 52-53. The appellant argued below that the administrative judge erred by not allowing him to ask the Chief of Radiology Service about a pattern of irregularities regarding disclosures of personal health information in violation of the Health Insurance Portability and Accountability Act (HIPAA). W-2 AF, Tab 3 at 4-5. He also asserted that the Department of Health and Human Services Office of Civil Rights commenced an investigation into these allegations. *Id.* The May 2014 letter informed the appellant that his complaint to the "Office for Civil Rights" was "thoroughly investigated" and found to be "accurate," "appropriate measures have been implemented to address [the] issue," and "the employees involved received additional education and training." PFR File, Tab 1 at 52. Importantly, the May 2014 letter does not identify any other pertinent details, including the nature of the complaint, the names or positions of the individuals involved, and/or the timeframe and scope of the alleged misconduct. Therefore, we find that the May 2014 letter has little, if any, probative value.

¶16       The appellant also asserts on review that the administrative judge committed harmful error because the agency took actions against him based on allegations that he failed to respect patient privacy but he was prevented from showing that other employees had committed similar HIPAA-related violations. *Id.* at 21; ID at 28-33. We are not persuaded by this argument. In the initial decision, the administrative judge found that there was "little or no evidence that non-whistleblowers had engaged in similar conduct or had similar performance problems but did not have their appointments terminated." ID at 44. Moreover, the Board's regulations provide an administrative judge with wide discretion to control a hearing, including regulating the course of a hearing and receiving relevant evidence. *Franco v. U.S. Postal Service*, 27 M.S.P.R. 322, 325 (1985); 5 C.F.R. § 1201.41(b)(3), (b)(6). In the absence of any specific details regarding the nature of the Office of Civil Rights investigation or its findings, or any evidence whatsoever that any of the individuals involved had similar conduct and performance issues as the appellant, we are not persuaded that the administrative judge erred during the hearing in this matter.

¶17       Most of the appellant's other documents on review appear to relate to his harmful procedural error and due process claims. *E.g.*, PFR File, Tab 1 at 6-7, 10, 13, 18, 21-22. As noted above, *infra* ¶ 7, these claims cannot be heard in the context of an IRA appeal. We have reviewed the remaining documents and conclude that they do not warrant a different outcome.

¶18       The record reflects that the administrative judge considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on the issue of credibility. *See, e.g.*, *Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (finding no reason to disturb the administrative judge's findings where she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions); *Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987) (same). For these reasons, we affirm the initial decision.

**NOTICE TO THE APPELLANT REGARDING
YOUR FURTHER REVIEW RIGHTS**

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit.

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction. The court of appeals must receive your petition for review within 60 days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. You may choose to request review of the Board's decision in the U.S. Court of Appeals for the Federal Circuit or any other court of appeals of competent jurisdiction, but not both. Once you choose to seek review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information about the U.S. Court of Appeals for the Federal Circuit is

available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.  Additional information about other courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:                         _____
                                       William D. Spencer
                                       Clerk of the Board

Washington, D.C.